IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TURNER CONSTRUCTION CO.,

          Plaintiff,

v.

CIVIL ACTION NO:  2:05-MC-2025

TIG INSURANCE COMPANY, successor by
merger to American Safety Casualty Insurance
Company,

          Defendant.

and

UNITED STATES f/u/b/o DESIGNER'S
SPECIALTY CABINET CO. d/b/a DESIGNER'S
SPECIALTY MILLWORK,

          Intervenor-Plaintiff,

v.

TURNER CONSTRUCTION CO., TRAVELERS
SURETY & CASUALTY CO. OF AMERICA,
FEDERAL INSURANCE CO., THE
CONTINENTAL INSURANCE CO., FIDELITY &
DEPOSIT CO. OF MD, ZURICH NORTH
AMERICAN INSURANCE CO., and ZURICH
AMERICAN INSURANCE CO.,

          Intervenor-Defendants,

_____/

TURNER CONSTRUCTION COMPANY,

          Counter-Plaintiff,

v.

DESIGNER'S SPECIALTY CABINET CO., d/b/a
DESIGNER'S SPECIALTY MILLWORK,

          Counter-Defendant.

_____/

## DEFENDANT, TIG INSURANCE COMPANY'S, MOTION TO QUASH OR, IN THE ALTERNATIVE, MOTION TO TRANSFER

TIG Insurance Company, successor by merger to American Safety Casualty Insurance

Company ("American Safety"), by and through its undersigned attorneys and pursuant to Federal

Rules of Civil Procedure 45(d)(3) and 45(f), requests that the Court quash the Subpoena Duces Tecum issued by Turner Construction Company to Cashin, Spinelli & Ferretti, LLC ("the Subpoena") or, in the alternative, that the Court transfer this motion to the court that issued the Subpoena.  In support, American Safety states as follows:

## I.    PROCEDURAL HISTORY

1.    On May 19, 2015, Turner Construction Company ("Turner") filed a complaint against American Safety, styled *Turner Construction Company v. TIG Insurance Company, successor by merger to American Safety Casualty Insurance Company*.  That action is pending in the United States District Court for the Northern District Court of West Virginia and was assigned Case No. 1:15CV83 (the "Litigation").

2.    The Litigation involves, among other claims, Turner's claims for purported breaches of a Subcontract Agreement and Performance Bond, and counterclaims by intervenor, Designer's Specialty Cabinet Company, Inc. d/b/a Designer's Specialty Millwork ("DSM") - the principal on the bonds issued by American Safety, for fraud, breach of contract and recovery on numerous delay and change order claims. All claims arise out of a Project identified as the Biometric Technology Center (BTC) New Office Building and Central Utilities Expansion, No. 17363PJ-042, located in Clarksburg, West Virginia (the "Project").

3.    On July 29, 2016, Turner served the Subpoena on Cashin, Spinelli & Ferretti, LLC ("Cashin"), the outside consulting firm initially retained in early 2014 by American Safety to work with American Safety on issues raised by Turner concerning DSM's performance on the Project.  Cashin is not a party in the Litigation. A true and correct copy of the Subpoena is attached hereto as **Exhibit 1**.

4.    The issuing court of the Subpoena is the United States District Court for the Northern District of West Virginia, where the underlying Litigation is pending.

5.    The Subpoena was served on Mr. Baldassarre as Cashin's Regional Manager. The Subpoena demanded that Cashin produce nine (9) broad categories of documents by August 24, 2016 at the office of Turner Construction Company, 113 Penn Avenue, Suite 300, Pittsburgh, Pennsylvania 15222.

6.    Cashin served its objections to the Subpoena through the law firm of Shumaker, Loop & Kendrick, LLP, and a true and correct copy of that communication is attached hereto as **Exhibit 2**.

7.    American Safety files this motion in the Western District of Pennsylvania because the Subpoena calls for the production of the documents to occur in Pittsburgh, Pennsylvania. *See* Fed. R. Civ. P. 45(d)(3)(A) and 45(f) (requiring that a motion to quash be filed in the district where compliance is required but permitting that such a motion be transferred to the issuing court under certain circumstances).

8.    As discussed below, the Subpoena must be quashed.

## II.    FACTUAL BACKGROUND

9.    On or about September 14, 2010, Turner as Contractor and the Federal Bureau of Investigation, U.S. Department of Justice as Owner (the "FBI") entered into the General Contract.

10.    On or about May 8, 2012, Turner entered into a Subcontract with DSM.  DSM's scope of work on the Project included, among other things, the custom architectural woodwork.

11.     In connection with the Turner–DSM Subcontract, American Safety issued Performance Bond No. ASB-532575 (the "Performance Bond").[1]

12.     In early 2014, American Safety initially retained Louis M. Baldassarre of Cashin to work with American Safety on issues raised by Turner concerning DSM's performance on the Project.

13.     On or about October 16, 2014, Turner communicated its default of DSM to American Safety and DSM.  DSM responded on its behalf, objecting to and challenging the validity of the default notifications. American Safety also responded, objecting to and challenging the validity of the default notifications.  DSM and American Safety disputed Turner's assertions that DSM had abandoned the project, failed to cure the purported defaults, or otherwise materially breached the Subcontract.  DSM and American Safety had a common interest in the defense of the claimed default and damages.

14.     On or about October 24, 2014, Turner, through counsel, asserted, among other things, that the "relatively small dispute" would "grow into a million dollar plus dispute very quickly" and the dispute "is going to get ugly very fast."  As stated above, DSM and American Safety had a common interest in the defense of the claimed default and damages.

15.     In correspondence dated October 21, 2014, American Safety, through Mr. Baldassarre of Cashin, requested that Turner provide certain documentation regarding the Project and the default.  Turner did not produce the requested documentation.

---

[1] Effective June 30, 2016, American Safety Casualty Insurance Company merged into TIG Insurance Company. In the Litigation, the court entered an order substituting the party defendant and acknowledging that the defendant therein would thereafter be identified as TIG Insurance Company, successor by merger to American Safety Casualty Insurance Company.

16.    In an email communication sent by Turner's counsel in early March 2015, Turner asserted that DSM remained in default of the Subcontract and that costs and legal fees associated with the default were mounting and exceeded $500,000.

17.    Turner, through counsel, first provided an initial accounting of the purported damages via an email (with Excel spreadsheet) on or about March 19, 2015.

18.    When Turner filed its complaint on May 19, 2015, Turner identified the damages as approximately $892,971.18.

19.    In context with the above events, in approximately March 2015, in addition to Mr. Baldassarre, Carlos Carrillo of Cashin began consulting with American Safety and then also its outside counsel, regarding the alleged default, claimed damages and affirmative claims of DSM.

20.    The consultants affiliated with Cashin were privy to legal strategy and legal advice in their respective roles as consulting experts to American Safety and DSM, with respect to anticipated litigation and then the actual Litigation.

21.    Mr. Baldassarre and Mr. Cashin are non-testifying experts and consultants.

22.    During the course of the Litigation, American Safety produced documents in connection with its Rule 26 Disclosure and in response to Turner's First Request to Produce.  In doing so, American Safety produced relevant and non-privileged communications involving Cashin.

23.    In the Litigation, American Safety, DSM and Turner have engaged in at least four hearings with Magistrate Judge Aloi regarding pending discovery motions and discovery issues, including some issues involving the assertion of the common interest privilege, attorney-client privilege and work product privilege.

24.     The undersigned counsel for American Safety has conferred with Cashin, and the undersigned may represent that Cashin consents to transferring this motion to the United States District Court for the Northern District of West Virginia.

25.     In addition to filing this motion, American Safety is filing a Motion for Protective Order in the Northern District of West Virginia, where the underlying case is pending, pursuant to Federal Rule of Civil Procedure 26.

## III.    ARGUMENT

## A.    Motion to Quash

The Subpoena must be quashed pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii).  The Rule provides in pertinent part:

> (3) *Quashing or Modifying a Subpoena.*  (A) *When Required.*  On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> ***
> (iii) Requires disclosure of privileged or other protected matter, if no exception or waiver applies.

Fed. R. Civ. P. 45(d)(3)(A)(iii) (emphasis in original).  The Subpoena must be quashed because it requests documents and information protected under (1) Federal Rule of Civil Procedure 26(b)(4)(D); (2) the work product doctrine; (3) the attorney-client privilege; and (4) the common interest privilege.

### 1.    Rule 26(b)(4)(D) – Information Held by Non-Testifying Expert

Pursuant to Rule 26(b)(4)(D), a party is ordinarily not entitled to discover information held by a non-testifying consulting expert retained by another party in anticipation of litigation or to prepare for trial.  Fed. R. Civ. P. 26(b)(4)(D).  In such circumstances, the party seeking to discover the information must demonstrate "exceptional circumstances under which it is

impracticable for the party to obtain facts or opinions on the same subject by other means." *Id.* Several policy considerations underlie the rule:

> (1) the interest in allowing counsel to obtain the expert advice they need in order [to] properly evaluate and present their clients' positions without fear ...; (2) the view that each side should prepare its own case at its own expense; (3) the concern that it would be unfair to the expert to compel its testimony and also the concern that experts might become unwilling to serve as consultants if they suspected their testimony would be compelled; and (4) the risk of prejudice to the party who retained the expert as a result of the mere fact of retention.

*Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 6 (D.D.C. 2013) (quoting *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 288 F.R.D. 222, 227–228 (D.D.C. 2012)); *e.g. Lowes's Home Centers, Inc. v. THF Clarksburg Dev. Two, Ltd. Liab. Co.*, 2013 WL 3367304 (N.D. W. Va. 2013) (concluding Lowes was not required to produce any document that its non-testifying experts prepared in connection with their work as consultants to Lowes pursuant to Rule 26(b)(4)(D)); *Sara Lee Corp. v. Kraft Foods Inc.*, 273 F.R.D. 416, 420 (N.D. Ill. 2011) (finding that requested materials were protected from disclosure because they related solely to expert's role as non-testifying consultant and plaintiff failed to show exceptional circumstances justifying their disclosure).

In this case, it should first be noted that American Safety has already produced the non-privileged and relevant documents that would be responsive to the Subpoena in the documents produced in the case by American Safety.  American Safety marshalled its documents and those of Cashin, and for the time period prior to Turner's filing of the Complaint, produced communications between American Safety and DSM, American Safety and Cashin, Cashin and DSM, and combinations of those parties, where no privilege applied.

Importantly, however, Cashin has primarily served as a non-testifying consulting expert in anticipation of litigation and/or to prepare for trial with respect to the claims made against

American Safety and DSM in this case. As a result of Turner's October 2014 communications, litigation was anticipated early in this disputed default situation. By March 2015, when Turner communicated damages in excess of $500,000, American Safety, sometimes through Claims Counsel and sometimes through outside counsel, directed Cashin's work in anticipation of litigation. Turner filed suit in mid-May 2015. Thus, the Subpoena violates Rule 26(b)(4)(D) to the extent it requests documents and information held by Cashin as American Safety's consulting expert. Because no exceptional circumstances exist to warrant the disclosure of this protected information, the Subpoena should be quashed.

### 2. Work Product

The work product doctrine protects from disclosure materials that are prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A).[2] Such materials are protected if they are prepared by a party's consultant:

> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, ***consultant, surety, indemnitor***, insurer, or agent).

*Id.* (emphasis in bold added). "A document is prepared in the anticipation of litigation if 'the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation.'" *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 542 (N.D.W. Va. 2000) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992)). With respect to insurance claim files, "insurance claim files generated in relation to investigating and defending against

---

[2] In diversity cases such as the underlying litigation, federal courts apply federal law to resolve work product challenges and state law to resolve attorney-client challenges. *Ellis v. Arrowood Indem. Co.*, 2014 WL 4365273, *3 (S.D. W.Va. 2014) (citing *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 329 n. 2 (N.D. W.Va. 2006)).

third-party claims are generally considered work-product because they were clearly prepared for the purposes of the underlying litigation, rather than in the insurer's ordinary course of business." *Smith v. Scottsdale Ins. Co.*, 40 F. Supp. 3d 704, 720 (N.D.W. Va. 2014), *aff'd*, 621 Fed. Appx. 743 (4th Cir. 2015).[3]

Courts recognize two types of work product—opinion work product and fact work product. *In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir. 1994); *Ellis v. Arrowood Indem. Co.*, 2014 WL 4365273 at *6 (S.D.W. Va. 2014). Opinion work product includes the thoughts and impressions of a party's attorney and is scrupulously protected. *Id.* Fact work product includes such things as statements, interviews, and correspondence and is only discoverable if the party seeking it demonstrates a substantial need and an inability to secure a substantial equivalent by alternate means without undue hardship. *Id.*

In this case, the communications between American Safety's representatives and DSM – which involve a surety, outside consultants and the principal who is also an indemnitor - as to which one or more privilege is claimed are all after Turner's declaration of default. The withheld communications were in anticipation of litigation, and involve discussions of opinions, strategy, facts and details concerning the action and inaction of Turner in regard to the default of DSM and the demand pursuant to American Safety's Performance Bond. The work product privilege was not waived by exchange of documents and information between persons with common

---

[3] Suretyship and insurance have similar characteristics and sometimes are discussed as related concepts; however, they are distinct. *See, e.g., Shannon R. Ginn Const. Co. v. Reliance Ins. Co.*, 51 F.Supp.2d 1347, 1350 (S.D. Fla. 1999); *Western World Ins. Co. v. Travelers Indem. Co.*, 358 So. 2d 602, 604 (Fla. 1st DCA 1978) ("[T]he usual view, grounded in commercial practice, [is] that suretyship is not insurance.") (quoting *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 140 n. 19, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)); *Western World Ins.*, 358 So.2d at 604 ("The surety, unlike the liability insurer, however, is entitled to be indemnified by the one who should have performed the obligation.").

interests in the subject matter. *In Re Doe,* 662 F.2d 1073, 1081 (4th Cir. 1981) (holding that disclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to a waiver).

As noted above, American Safety has produced the non-privileged and relevant documents that would be responsive to the Subpoena. Other than what has already been produced, the remaining Requests in the Subpoena seek communications, information, or reports prepared in anticipation of litigation, or by Cashin in its capacity as a non-testifying consulting expert to DSM and American Safety. As such, the requested materials are protected under the work product doctrine, and the Subpoena must be quashed accordingly.

### 3.    Attorney-Client Privilege

Under West Virginia law,[4] the attorney-client privilege consists of four elements: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his or her capacity as a legal adviser; (3) the communication between the attorney and client must be intended to be confidential; and (4) the client must not intentionally waive the privilege. *Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 271 F.R.D. 125, 131 (S.D.W. Va. 2010); *Kidwiler*, 192 F.R.D. at 540. Communications between a party's independent consultant and the party's counsel are protected if the consultant is the "functional equivalent" of an employee of the party, itself. *In re Bieter Co.*, 16 F.3d 929, 939–940 (8th Cir. 1994); *In re Lumber Liquidator S Chinese-Manufactured Flooring Products Marketing*, 2015 WL 9474286, at *1 (E.D. Va. 2015); *see also Mt. Hawley*, 271 F.R.D. at 133 (finding that attorney-client privilege extended to client's consultant acting on behalf of client).

---

[4] See footnote 1.

In any case, the communications must be part of the process of seeking, developing or conveying legal advice or strategy. *Lumber Liquidator*, 2015 WL 9474286, at *1.

As discussed above, American Safety has already produced the non-privileged and relevant documents that would be responsive to the Subpoena. However, the Subpoena calls for the production of communications between Cashin and American Safety's internal claims counsel involving legal advice and/or legal strategy. Such communications are protected under the attorney-client privilege, and no waiver of the privilege occurred in light of the fact that during the initial engagement, Cashin's employees (particularly Mr. Baldassarre) were the functional equivalent of an American Safety employee. For these reasons, the Subpoena must be quashed.

### 4.    Common Interest Privilege

Finally, American Safety shares a common interest privilege with DSM. As such, American Safety did not waive any work product protection or attorney-client privilege by exchanging protected documents with Cashin and/or DSM.

The common interest privilege, or joint defense rule, protects from disclosure both work product and attorney-client materials exchanged between persons sharing a common interest in anticipated and pending litigation. *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990); *Chambers v. Allstate Ins. Co.*, 206 F.R.D. 579, 589 (S.D. W. Va. 2002). As the Fourth Circuit explained:

> Whether an action is ongoing or contemplated, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.

*Grand Jury Subpoenas*, 902 F.2d 244 at 249.

In this case, American Safety, Cashin, and DSM all shared a common interest in the underlying Litigation.  Accordingly, American Safety did not waive any work product immunity or attorney-client privilege by exchanging documents with Cashin or DSM.  The Subpoena must be quashed.

**B.    Motion to Transfer**

American Safety also requests that this motion be transferred to the United States District Court for the Northern District of West Virginia (the court that issued the Subpoena) pursuant to Federal Rule of Civil Procedure 45(f).

Rule 45(f) provides:

> **(f) Transferring a Subpoena-Related Motion.** When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances. Then, if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court. To enforce its order, the issuing court may transfer the order to the court where the motion was made.

Fed. R. Civ. P. 45(f) (emphasis in original).  Among other things, transfer is appropriate to avoid disrupting the issuing court's management of the underlying litigation and to avoid the risk of creating inconsistent rulings with the issuing court's rulings on the same or similar issues. *Parks, LLC v. Tyson Foods, Inc.*, MISC.A. 15-634, 2015 WL 5008255, at *2 (W.D. Pa. 2015). Specifically, transfer is appropriate where such risks outweigh the interests of the subpoenaed nonparty in obtaining local resolution of the motion.  *Id.*

In this case, Cashin consents to transferring this motion.   Accordingly, transfer is appropriate under Rule 45(f).  Additionally, exceptional circumstances support such a transfer.

Specifically, transferring this motion will avoid the risk of disrupting the issuing court's rulings on similar issues.

First, Turner, DSM and American Safety have already engaged in multiple hearings on discovery motions before the issuing court on issues similar to those raised in this motion. The issuing court has conducted a series of hearings on discovery motions. Second, Turner has represented that it will file an additional motion to compel directed to DSM's privilege log. This additional motion to compel will undoubtedly relate directly to the issues raised in this motion. Finally, the issuing court has permitted Turner to submit search terms for further searches in DSM's email database, and Turner has named search terms that will again implicate many of the issues raised in this motion. In short, not only has the issuing court already ruled on issues similar to those in this motion, but it will inevitably be requested to do so again in the near future. As such, this motion should be transferred to the issuing court to enable it to continue to manage the underlying litigation without disruption.

## IV.    CERTIFICATE OF GOOD FAITH CONFERENCE

In the action pending in the United States District Court for the Northern District of West Virginia, with regard to the Motion for Protective Order, counsel for American Safety conferred with Turner's counsel in a good faith attempt to resolve the issues raised in that motion - all of which relate to this motion - but counsel were unable to reach an agreement. On August 11, 2016, counsel for American Safety sent two letters to counsel for Turner. On August 19, 2016, counsel for American Safety conducted a good faith conference call with counsel or Turner and counsel for DSM. On August 30, 2016, counsel for Turner, American Safety and DSM began discussing the disputed issues with the Court during a scheduled status conference, which discussion was continued during a subsequent status conference with the Court on Friday,

September 2, 2016.  During the September 2nd status conference, the Court and counsel agreed to a schedule for motions arising out of the Cashin Subpoena issues and/or other privilege log issues (as to logs produced by DSM and/or American Safety).

## V.    CONCLUSION

For the reasons discussed above, the Subpoena should be quashed or, in the alternative, this Court should transfer this motion to the United States District Court for the Northern District of West Virginia.

WHEREFORE, TIG Insurance Company, successor by merger to American Safety Casualty Insurance Company, respectfully requests that this Court (1) grant this motion; (2) enter an order quashing the Subpoena Duces Tecum issued by Turner Construction Co. to Cashin, Spinelli & Ferretti, LLC or, in the alternative, transferring this motion to the United States District Court for the Northern District of West Virginia; and (3) granting such other and further relief as this Court deems necessary and proper.

Dated: September 9, 2016                           Respectfully Submitted,

                                                   STEPTOE & JOHNSON, PLLC


                                            By: /s/ Adam S. Ennis
                                                Adam S. Ennis
                                                PA Bar I.D. No. 71999
                                                11 Grandview Circle, Suite 200
                                                Canonsburg, PA 15317
                                                Telephone: (724) 749-3140
                                                Facsimile: (724) 873-3143
                                                Email:  adam.ennis@steptoe-johnson.com
                                                *Counsel for Defendant, TIG Insurance Company, successor by merger to American Safety Casualty Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2016, I electronically filed the foregoing Motion To Quash with the Clerk of the Court using the CM/ECF and served a copy upon the following counsel of record by depositing a true and correct copy thereof in the United States mail, postage prepaid, addressed as follows:

**Bryant J. Spann, Esq.**
**M. David Griffith, Jr., Esq.**
**Joseph K. Merical, Esq.**
Thomas Combs & Spann, PLLC
300 Summers St., Suite 1380
Charleston, WV 25301
Email: bspann@tcspllc.com
Email: dgriffith@tcspllc.com
Email: jmerical@tcspllc.com
*Counsel for Turner Construction Company,*
*Travelers Casualty and Surety Company of*
*America, Federal Insurance Company, The*
*Continental Insurance Company, Fidelity and*
*Deposit Company of Maryland, Liberty*
*Mutual Insurance Company, and Zurich*
*American Insurance Company*

**Robert J. Symon, Esq.**
**Eric A. Frechtel, Esq.**
Bradley Arant Boult Cummings
1615 L Street, N.W., Suite 1350
Washington D.C. 20036
Email: rsymon@babc.com
Email: efrechtel@babc.com
*Counsel for Plaintiff,*
*Turner Construction Company*

**Tammy N. Giroux, Esq.**
Shumaker, Loop & Kendrick, LLP
101 E. Kennedy Blvd., Suite 2800
Tampa, FL 33602
Email: tgiroux@slk-law.com
Email: wgould@slk-law.com
*Counsel for Defendant,*
*TIG Insurance Company, successor by merger*
*to American Safety Casualty Insurance*
*Company*

**William E. Ford, III, Esq.**
Ford Law Office
Goff Building
321 W. Main Street, Suite 600
Clarksburg, WV 26301
Email: clarksburgwvlawyer@gmail.com
Email: wef@ix.netcom.com
*Counsel for Intervenor,*
*Designer's Specialty Cabinet Co.*

**Rosemary H. Hayes, Esq.**
Hayes Law, PL
830 Lucerne Terrace
Orlando, Florida 32801
Email: rhayes@const-law.com
Email: cstone@const-law.com
*Pro Hac Vice; Counsel for Intervenor,*
*Designer's Specialty Cabinet Co.*

By: /s/ Adam S. Ennis
    Adam S. Ennis